## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MARYLAND

TERESA JO JONES, #914885    :

  Petitioner[1]       :

  v.            :   Civil Action No. PJM-04-0317

JOHN WILT, Warden, et al.,    :

  Respondents      :
             oo0oo

## MEMORANDUM OPINION

  Teresa Jo Jones has filed a petition pursuant to 28 U.S.C. § 2254 for habeas corpus relief, challenging her 1997 conviction and 1998 sentence for second-degree murder and a related handgun offense. She advances three claims of ineffective assistance of counsel: unreasonable failure to assert a Not Criminally Responsible ("NCR") defense; unreasonable failure to assert a "hot-blooded response" to provocation defense, and unreasonable failure to argue for mitigation at sentencing. By order dated March 8, 2007, the Court directed that an evidentiary hearing be held in the matter for the limited purpose of receiving further testimony from Jones' trial counsel, Frank Freeman, Esquire. Having considered the pleadings and evidence at the hearing, the Court DENIES the petition.

## I.

  A discussion of the somewhat convoluted procedural history and factual background of the petition is in order:

  In 1997, a Baltimore County jury found Jones guilty of second degree murder and use of a

---

[1]  Jones filed her original Petition *pro se,* but obtained counsel in July of 2005.

handgun in the commission of a crime of violence in connection with the killing of her husband Steve Jones. Jones was represented at trial by Freeman, a longtime family friend. At trial, Jones did not dispute that, on October 14, 1996 she shot her husband with his handgun, but asserted that she acted in self-defense. Specifically, she alleged that the couple had a history of marital problems and that her husband physically abused her. As of the night of the murder, the couple were not living together. On that night, Jones went to her husband's place of abode, the couple argued, decided to go to bed, but there they continued to fight. Jones testified that after her husband said he was going to kill her, she tried to leave the house, but he dragged her back to the house and pushed her face down on the floor. She testified that she felt something cold like a knife or gun at the back of her head, saw her husband's gun on the floor, grabbed it and shot him.

Throughout, counsel proceeded upon a theory of self-defense and suggested that Jones suffered from battered spouse syndrome. Despite Jones' account of the physical struggle leading up to the shooting, counsel did not advance any theory of hot-blooded response to mutual combat. Nor did he put forth any defense of "Not Criminally Responsible" (NCR). The jury deliberated for roughly three hours before returning guilty verdicts of second degree murder and use of a handgun.

Prior to sentencing, counsel apparently requested a pre-sentencing report only after repeated prompting by the judge. While at sentencing itself counsel made a plea for mercy, citing Jones' youth and her ability to lead a productive life, he failed to recite any evidence or make any argument as to Jones' mental state. The judge sentenced Jones to 25 years for murder plus 10 years for the use of the handgun, the sentences to run consecutively.

Jones appealed to the Maryland Court of Special Appeals, raising the following issues: (1) whether the trial court's instruction on the relationship between evidence of battered spouse

syndrome and self-defense was inaccurate and confusing and (2) whether the evidence was sufficient to sustain a verdict of guilty for second-degree murder.  The Court of Special Appeals, finding no error, affirmed.  Jones' subsequent petition for certiorari to the Court of Appeals was denied.

Jones thereafter commenced state post-conviction proceedings in the Circuit Court for Baltimore County.  After several days of hearings, the court denied the petition, deferring to counsel's strategic decisions.  On appeal, the Court of Special Appeals affirmed once again, holding that:

(1)     As to the hot-blooded response claim, it was reasonable for counsel to have pursued the self-defense/battered spouse theory and to have determined that to present the hot-blooded response defense to the jury would be bad strategy.

(2)     Regarding the NCR claim, counsel made a reasonable investigation and unearthed no evidence that would have indicated that Jones was not criminally responsible or that such a defense was otherwise viable.

(3)     Counsel's presentation at sentencing was not deficient because the sentencing court had the complete pre-sentence report in hand and was quite familiar with the trial testimony as to Jones' mental status.  Accordingly, counsel's decision to limit his argument to the court was reasonable.

Jones' petition for a writ of certiorari to the Maryland Court of Appeals was denied.

Jones then filed a *pro se* § 2254 petition with this Court, which the Court denied, finding that counsel's actions satisfied the deferential standards of *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

Represented by counsel, Jones appealed this Court's decision but, before the appeal was decided, the Fourth Circuit issued its decision in *Thompson v. Greene*, 427 F.3d 263, 264 (4th Cir. 2005), holding that habeas corpus petitioners are entitled to receive the pleadings and exhibits on file with the court, documents which Jones had in fact not received.  Jones thereupon filed a Rule 60(b) Motion to Vacate Denial of the Petition.  After this Court entered a memorandum indicating its intention to grant the Rule 60(b) motion, the Fourth Circuit granted a limited remand.[2]  By Memorandum Opinion dated March 9, 2006, this Court granted the Rule 60(b) Motion, the case was reopened, and the Office of the Attorney General was ordered to provide Jones copies of all state exhibits.  Jones was given thirty days to file a supplemental reply to the State's opposition to her habeas petition.

Jones filed a supplemental reply, accompanied by a motion for summary judgment, which the State opposed.  After considering the State's supplemental response, the Court denied Jones' motion for summary judgment and ordered an evidentiary hearing.

## II.

Claims of ineffective assistance of counsel are governed by the two-part test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires that an individual claiming ineffective assistance demonstrate (1) "that counsel's performance was deficient," and; (2) "that the deficient performance prejudiced the defense." *Id*. at 687. Representation is deficient if it "falls below an objective standard of reasonableness." *Id*. at 688.  It must be shown that counsel's

---

[2]     *See Fobian v. Storage Tech. Corp*., 164 F. 3d 887, 891 (4th Cir. 1999) (holding that a district court cannot grant a Rule 60 (b) motion after an appeal has been filed unless the appellate court grants a limited remand after the district court enters a memorandum indicating its intention to grant the Rule 60(b) motion).

performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687. The standard of review for assessing such competence "must be highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 669. Indeed, to prevail, the habeas petitioner must overcome the presumption that the challenged action might be considered "sound trial strategy." *Id.* at 689.

A showing of prejudice requires "that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable," and that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 690-94. Put differently, "[t]he benchmark of an ineffective assistance claim must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id.* at 686.

In the § 2254 context, it is not sufficient for a petitioner to convince the federal habeas court that the state court merely applied *Strickland* incorrectly. Rather, a petitioner must show that the state court applied *Strickland* to the facts of the case in an objectively unreasonable manner. *Bell v. Cone,* 535 U.S. 685, 694 (2002); *Williams v. Taylor,* 529 U.S. 362, 405 (2000).

### III.

The Court first considers Jones' claim that counsel's alleged failure to investigate and present an NCR defense constituted ineffective assistance of counsel. She argues that the Court of Special Appeals erred when it concluded that the investigation into criminal insanity was adequate.

Counsel has a duty to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Strategic choices made

after "less than complete investigation" are reasonable "precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. On the other hand, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690-91.

In the present case, mere days after the shooting, counsel retained a psychiatrist, Dr. B.F. Beran, to evaluate his client. Dr. Beran determined that Jones was suffering from battered spouse syndrome and had numerous psychological issues resulting from the trauma of the shooting. Counsel testified before this Court that he discussed with Dr. Beran whether Jones might not have been criminally responsible at the time of the shooting but that Dr. Beran gave his opinion that such was not the case.

Jones, however, faults counsel's reliance on Dr. Beran's opinion because Dr. Beran was asked to gauge her health *while in detention,* not her state of mind *at the time of the crime*. Accordingly, Jones argues, Dr. Beran was not in a position based on his limited evaluation of her to provide any opinion, let alone a definitive opinion that would foreclose further inquiry that she was not insane at the time of the shooting. The Court disagrees. Dr. Beran's report does provide at least some evaluation of the moment of the crime itself: "The patient shot her husband when fearing for her life, the patient has apparently also experienced an altered state of consciousness with disassociation, perceptual disturbances and amnesic period *during* and after the shooting" (emphasis added). Indeed, an entire section of Dr. Beran's report is devoted to "The Alleged Offense" and he notes that Jones "started to realize what happened or to sort out what happened at all only the day before and on the morning of the day" of his interview with her. While the Court agrees that the primary purpose of Dr. Beran's interview with Jones was to determine her mental status while

incarcerated, the Court is satisfied that Dr. Beran was presented with a comprehensive view of Jones' mental history, including as of the day of the crime, such that he was qualified to render an opinion as to the viability vel non of any NCR defense.

Moreover, as the Maryland Court of Special Appeals noted, counsel testified that he had researched the issue of NCR and consulted with other attorneys as to its general effectiveness with juries, eliciting generally unfavorable responses.  Counsel also benefitted from his own evaluation of Jones, whom he had known over several years and with whom he was in close contact during the course of the trial.  He explained that he believed "her credibility in a double defense of temporary insanity and that of being a battered or abused spouse would be incredible to a Jury and ruin her chances of getting acquitted."

The Court is satisfied that counsel's performance insofar as the NCR defense was concerned was not substandard within the meaning of *Strickland*.  It is apparent that counsel considered the defense, conducted an investigation into its viability and plausibly concluded that it would not be compatible with the self-defense/battered spouse theory he thought was Jones' best option.  *See Strickland,* 466 U.S. at 689 (noting the "wide latitude counsel must have in making tactical decisions").  *See also Springer v. Collins*, 586 F.2d 329, 332-33 (4th Cir. 1978) (considering fact that trial counsel had known defendant for ten years and "had discerned no evidence of mental problems or abnormalities" in concluding that counsel's investigation of the insanity defense was not deficient); *United States v. Slayman*, 590 F.Supp. 962, 966-67 (D. Pa. 1984) (holding that counsel was not ineffective for failing to pursue insanity defense where interaction with client did not suggest any basis for that defense).

While in hindsight, with the benefit of current diagnoses of borderline personality disorder and major depression with psychotic features, Jones may now believe that further investigation would have yielded information that might have made NCR a viable defense, the Court remains unpersuaded that counsel's investigation at the time was below par. Jones was also evaluated by the State's psychologist, Dr. Mary Ann Dutton, who, like Dr. Beran, emphasized the battered spouse element of Jones' mental condition, but who in no way found any indications suggesting Jones' possible non-criminal responsibility. Counsel cannot be faulted for failing to pursue an NCR defense.

## IV.

The Court turns to Jones' claim that counsel failed to investigate[3] or raise the defense of hot-blooded response, rendering his assistance constitutionally deficient.

She argues that the Court of Special Appeals erred when it reasoned that counsel's performance was not deficient because the self-defense/battered spouse theory would not have comported well with the hot-blooded response defense and because the trial record did not support

---

[3]    The State argues that Jones' claim that counsel's *investigation* was deficient should be procedurally defaulted because it was never raised in the state court proceedings; the original petition alleged only that counsel was ineffective for failing *to raise* the defense of hot-blooded response to legally adequate provocation. The State is correct that pursuant to § 2254(b) and (c), a state prisoner seeking federal habeas corpus relief must first present each of her claims to the state courts having jurisdiction. However, the Court is satisfied that the claims presented at the state court level fairly encompassed the investigation claim, even if counsel at the prior proceedings did not explicitly denominate the claim as such. More significantly, Jones' argument is that under *Wiggins v. Smith*, 539 U.S. 510 (2003), counsel's failure to *investigate* the hot-blooded provocation defense necessarily means that his choice to not *present* the hot-blooded defense was unreasonable and not entitled to deference. Accordingly, this is not a *new* claim, merely a different packaging of the existing claims in light of the first prong of *Strickland* as elaborated in *Wiggins*. *See Wiggins,* 539 U.S. at 536.

a hot-blooded response defense.  As for why the trial record did not support a theory of hot-blooded

provocation, Jones' says that since counsel neither investigated nor presented it, he should not be

able to cite his own omission in order to excuse his performance.

The state of the record aside, the more compelling aspect of the Court of Special Appeals

decision is that counsel reasonably opted for the self-defense/battered spouse theory and plausibly

recognized the inherent difficulty of simultaneously presenting the hot-blooded response defense,

since each required proof of a different state of mind.  As the court explained:

> Trial counsel indicated at the post-conviction hearing that the decision to rely on
> perfect or imperfect self-defense and the Battered Spouse Syndrome was based on
> information that appellant had supplied to counsel and to other persons, such as the
> clinical psychologist who examined appellant.  Counsel further indicated that he
> believed that he would have antagonized the jury had he attempted also to urge upon
> them the contradictory theory that appellant acted in hot-blooded response.
> Appellant presents no convincing argument that counsel's decisions were
> unreasonable or reflected unsound trial strategy under the circumstances.

*Jones v. Maryland,* No. 1829, slip op. at 11 (Md. Ct. Spec. App. Oct. 10, 2003).

Again, it was entirely reasonable for counsel to decide to advance a self-defense/battered

spouse theory rather than a hot-blooded response theory.  The evidence available to him – Jones'

own version of the events (in her interviews with police, with the psychological experts, with

counsel and in her testimony on the stand itself) and the reports of the mental health professionals

including the State's expert – all pointed to a self-defense theory with particular emphasis on the

battered spouse syndrome.  This theory gave Jones a chance for a complete acquittal, instead of

merely reducing her exposure to a manslaughter conviction. The selection of this theory of defense

was clearly tactical.

But a tactical decision such as that at issue here - not to further investigate the hot-blooded response defense and not to present it - is entitled to deference and cannot be second-guessed.  The pursuit of the self-defense/battered spouse theory, even at the expense of the hot-blooded response theory, was reasonable under the circumstances.  *Strickland,* 466 U.S. at 689 ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable"); *see also Bell v. Cone*, 535 U.S. 685, 702 (2002).  The Court declines to second-guess counsel in this regard.

## V.

Jones' final claim of ineffective assistance of counsel is that counsel failed to investigate[4] and argue mitigating evidence at sentencing.

She argues that, despite having over four months to prepare for sentencing, counsel made no effort to develop mitigating evidence relative to her mental health.  She further argues that, having failed to conduct an appropriate investigation, counsel compounded his deficient performance by failing to argue at sentencing the mitigating evidence as to her mental health that he did have in his possession.  Counsel's only substantive argument, Jones says, was to point out that she was still a young woman who had a chance at leading some semblance of a productive life.

The failure to reasonably investigate mitigating circumstances to present at sentencing may constitute deficient performance under *Strickland*.  *See Wiggins* 539 U.S. at 533; *Wilson v. Ozmint,*

---

[4]    The State again objects to the inclusion of the purportedly "new" claim that counsel failed to develop mitigating evidence, as opposed to the argument that he failed to raise it.  The Court is satisfied that Jones' original claim of deficient advocacy at sentencing takes into account an alleged failure to prepare for sentencing by investigating mitigating factors.

352 F.3d 847, 864 (4th Cir. 2003) (observing that "*Wiggins* was clear that the failure of Wiggins'

counsel was not that they ultimately decided to limit their investigation or that they decided to focus

on Wiggins' culpability in mitigation but, rather, that the investigation said to support those

decisions was itself unreasonable").

      In the present case, it is entirely speculative whether further investigation into Jones' mental

health situation was called for or what such an investigation might have revealed. The presentence

report included the probation officer's narrative of Jones' mental health history, two letters from a

social worker who described Jones' symptoms of anxiety and depression, and the written evaluations

by Drs. Beran and Dutton. In other words, the investigation into Jones' mental health was in effect

already done. The question remains, What more could argument by counsel at sentencing have

done?

      As the Maryland Court of Special Appeals ruled, the sentencing judge, having sat through

the trial, was well acquainted with many aspects of Jones' mental health, including her condition

as a battered wife. As for counsel's brief allocution at sentencing, counsel explained that, though

he recognized that he could have made more elaborate arguments, he did not want to aggravate the

sentencing judge. The Court of Special Appeals agreed that counsel probably read the sentencing

judge accurately in this regard; that he was on a short leash with the judge and that his decision to

limit his remarks was "entirely reasonable." This Court agrees. The record clearly suggests that the

judge would have been extremely hostile to any appeals based on Jones' alleged infirm mental

condition.

      Indeed, the judge's own opinion was that Jones was culpable of the greater offense of first-

degree murder, as opposed to the offense of second-degree murder of which she was convicted. His

words just before imposing sentence were telling: "There was strong circumstantial evidence in this case, not only of second degree murder but of first degree murder."  In fact, the judge stated that he outright disbelieved Jones' testimony about spousal abuse: "It simply doesn't wash.  It is not convincing.  It is not persuasive," he said.  Faced with a sentencing judge in this frame of mind, it is highly improbable that calling his attention to any further evidence regarding mental health would have had any effect on the sentence he imposed.  And, of course, for the same reason that counsel was not unreasonable in abbreviating his allocution, it may be said that Jones suffered no prejudice as a result.  The judge made it clear he did not believe any line of argument pertaining to Jones' mental health and would have been unpersuaded by it.  *See United States v. Seyfert*, 67 F.3d 544, 548-49 (5th Cir. 1995) (recognizing that in non-capital sentencing proceeding, prejudice component of *Strickland* test requires defendant to establish reasonable probability that sentence would be significantly less harsh).

*Strickland* imposes a balanced standard.  It does not require counsel "to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing."  *Wiggins,* 539 U.S. at 533.  Nor does *Strickland* require that counsel present mitigating evidence at sentencing in every case.  *Id.*  In the circumstances of this case, any further investigation of Jones' mental history would have yielded little, if any, new evidence different from what had already been fully developed in the record.  Moreover, counsel's light touch at sentencing, given the sentencing judge's jaundiced view of Jones' purported mental infirmities, was not inappropriate.  Counsel's actions leading up to sentencing and at sentencing were not constitutionally deficient.

**VI.**

For the foregoing reasons, Jones' Petition for Writ of Habeas Corpus, as amended by her Supplemental Reply, is **DENIED.**  A separate Order **WILL BE ENTERED.**


                                                   /s/

August 3, 2007                                         PETER J. MESSITTE
                                                 UNITED STATES DISTRICT JUDGE